IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL E. FEAGIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:13-cv-536 |
| ) | |
| MILLARD McWHORTER; ANNETTE ) | |
| CAIN; DIANE WILLIAMS, and ) | |
| SOUTHERN HEALTH PARTNERS, ) | |
| | |
| Defendants. | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Michael E. Feagin brings this action[1] pursuant to 42 U.S.C. § 1983, challenging the medical treatment he received while he was an inmate of Covington County Jail in Andalusia, Alabama, from July 24, 2011, through July 29, 2011. *Doc. Nos. 1, 11, 18.* The defendants named to this action are Millard McWhorter, M.D.; Annette Cain, L.P.N.; Diane Williams, L.P.N.; and Southern Health Partners, Inc. *See Order of Dec. 2, 2013, Doc. No. 19*. Feagin seeks money damages and demands a jury trial. *Doc. Nos. 1, 11, 18.*

Pursuant to the orders of this court, defendants filed an answer, special report, supplemental report, and supporting evidentiary materials addressing the claims for relief raised in the complaint. *Doc. Nos. 20, 29, 33.* In their report, defendants deny they

---

[1] The court dismissed this action after plaintiff failed to respond to court orders. *Doc. Nos. 45, 46.* After plaintiff updated his address, the court vacated the dismissal and judgment, and the case was returned to the undersigned for further proceedings. *Doc. Nos. 48, 49.*

violated Feagin's Eighth Amendment rights, and they assert Feagin failed to exhaust his administrative remedies before filing suit. *Doc. No. 29*.

Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. *Doc. Nos. 20, 33*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted; "issue" altered to "dispute" to reflect the stylistic change in the current rule). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations added). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants in this case have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324. Pursuant to Rule 56, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" by citing to materials in the record including affidavits, relevant documents or other materials, the court can, among other things, "consider the fact undisputed for purposes of the motion . . . [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"). Only disputes involving material facts are relevant, and what is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints

are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Feagin fails to demonstrate a requisite genuine dispute of material so as to preclude summary judgment on all of his claims against the defendants. *Matsushita*, 475 U.S. at 587.

## II. SUMMARY OF MATERIAL FACTS

Plaintiff Michael E. Feagin was incarcerated at the Covington County Jail from July 24, 2011, until he was transferred on July 29, 2011, to a facility of the Alabama Department of Corrections. *Doc. No. 11*. At all times relevant to the complaint, defendants Annette Cain and Dianne Williams were licensed practice nurses and defendant Millard McWhorter was a medical doctor who worked for defendant Southern Health Partners, Inc., at the Covington County Jail. *Williams Aff.* ¶¶ 2-3 - *Doc. No. 29-1*; *Cain Aff.* ¶¶ 2-3 - *Doc. No. 29-2*; *McWhorter Aff.* ¶¶ 2-3 - *Doc. No. 29-3*. Southern Health Partners, Inc., has a contract with the Covington County Commission to provide medical care and services to inmates at the jail. *McWhorter Aff.* ¶ 4.

On Sunday, July 24, 2011, Feagin suffered a tibial plateau fracture to his leg. *Doc. No. 29-2 at 22*. He was released from the Andalusia Regional Hospital and booked into the Covington County Jail at 10:48 p.m. on July 24, 2011. *McWhorter Aff.* ¶ 8. The discharge instructions included rest, ice, compression, and elevation of the leg, and

Feagin was advised not to bear weight on the leg. *Doc. No. 29-2* at 22. The instructions also directed jail staff to call as soon as possible to arrange a follow up with orthopedic specialist Gil Holland, M.D., in three to five days, and that "Dr. Feagin [sic] will review films in AM and discuss w/ jail administration." *Id.* The instructions indicate Feagin should seek medical attention immediately if, among other things, he "experience[d] a severe increase in pain or swelling in the affected area." *Id.* Feagin was prescribed twenty tablets of Percocet 5 mg/325 mg, to be taken as one to two tablets every four to six hours as needed for pain, and the notes indicate Feagin "is a diabetic and *must* have his insulin and diabetic medication; also has high blood pressure." *Doc. No. 29-2* at 21. Because of his injury, Feagin was housed in the cell next to the jail's medical office, and he remained there until he was transferred from the jail. *Cain Aff.* ¶ 9. The next morning, on Monday, July 25, 2011, Cain saw Feagin, and Feagin gave Cain authorization to obtain his medical records from the hospital. *Cain Aff.* ¶ 10; *Doc. No., 29-*2 at 20. Cain then contacted McWhorter, who prescribed Percocet as directed by the hospital; Humulin 70/30 insulin, 15 units twice a day; Humulin R insulin on a sliding scale twice per day as needed; Metformin, 1000 mg, twice per day; Glucotrol 20 mg twice per day; Lisinopril, 10 mg once per day; ASA (aspirin) 81 mg once per day. *Cain Aff.* ¶ 14; *McWhorter Aff.* ¶ 14; *Doc. No. 29-2* at 25, 29. Cain and Williams aver, and the medical records indicate, that Feagin's blood pressure was checked daily, and that his insulin was checked and administered daily. *Cain Aff.* ¶¶ 20-24; *Williams Aff.* ¶¶ 9-10; *Doc. No. 29-2* at 17-18, 25, 29.

Because the jail does not keep a supply of narcotics, and Cain did not want to wait two days for the Percocet to arrive through normal ordering procedures, Cain went to a local pharmacy so Feagin could get the Percocet immediately. *Cain Aff.* ¶ 15. Cain also contacted the hospital, and Cain was told Dr. Holland's office would be contacting the jail to give further instructions. *Cain Aff.* ¶ 15; *Doc. No. 29-2* at 27. Medical records indicate Feagin's pain was "somewhat relieved." *Doc. No.29-2* at 27. According to Cain and the medical records, Cain gave Feagin ice packs, extra blankets so he could elevate his leg, crutches, and his leg was in an immobilizer. *Cain Aff.* ¶ 16; *Doc. No. 29-2* at 27. Cain states that Feagin was transported to and from court at 2:30 p.m. on July 25, 2011, with the help of crutches and a wheelchair. *Cain Aff.* ¶ 17; *Doc. No. 29-2* at 27.

Cain avers, and the medical records indicate, that on Tuesday, July 26, 2011, she gave Feagin his medications and more ice packs to help with swelling, and his leg was in the immobilizer. *Cain Aff.* ¶ 18; *Doc. No. 29-2* at 27. Dr. Holland's office had not returned her call, so she called the office again and left a message requesting a return phone call. *Cain Aff.* ¶ 18; *Doc. No. 29-2* at 27. Cain checked on Feagin in the afternoon of July 26, 2011, and she reported he was resting, with ice packs to his elbow and knee, his leg was immobilized and elevated, and he used crutches to use the bathroom. *Cain Aff.* ¶ 19; *Doc. No. 29-2* at 27.

On Wednesday, July 27, 2011, Cain gave Feagin medication for pain, and she gave him ice packs for his leg, which was still elevated and in the immobilizer. She also made an appointment for Feagin to see Dr. Holland on August 1, 2011. *Cain Aff.* ¶ 20;

*Doc. No. 29-2* at 27. On July 27, McWhorter made his regular visit to the jail, and he reviewed Feagin's chart, including the x-rays. *McWhorter Aff.* ¶ 21; *Doc. No. 29-2* at 28. McWhorter avers that it is not uncommon for an orthopedic physician to delay seeing a patient with a fractured limb for days, or even weeks, because the limb is often too swollen for immediate surgery or treatment. *McWhorter Aff.* ¶ 22. McWhorter's review of Feagin's chart indicated to McWhorter that Feagin had been seen and screened the day before, his condition was stable, he was not voicing complaints, he was isolated, his leg had ice packs and was elevated, he was receiving his regular medications, and he had a visit scheduled with an orthopedic specialist for August 1. *McWhorter Aff.* 21-22. In McWhorter's professional medical judgment, it was unnecessary for him to conduct a physical medication evaluation of Feagin on July 27. *McWhorter Aff.* ¶ 22.

On Thursday, July 28, 2011, Cain avers, and medical records indicate, that Cain gave Feagin medication for pain, his leg was immobilized, and he took a shower using crutches. *Cain Aff.* ¶¶ 22-23; *Doc. No. 29-2* at 28. Williams avers, and medical records indicate, that Williams saw Feagin for the first time on July 28, and he was resting quietly with his leg immobilized and elevated, and Williams gave Feagin his evening medications. *Williams Aff.* ¶ 8-9; *Doc. No. 29-2* at 28.

In the morning on Friday, July 29, 2011, Williams avers, and medical records indicate, that Williams gave Feagin his medications before he was transported from Covington County Jail to a facility of the Alabama Department of Corrections. *Williams Aff.* ¶ 10; *Doc. No. 29-2* at 28-29. Upon arrival in the Department of Correctional

8

Facility, Dr. Sangeeta Doshi conducted a hands-on examination of Feagin's leg. *Feagin Aff.* ¶¶ 36-37 – *Doc. No. 35-1*. Feagin immediately was given pain medication and transferred to the emergency room at Jackson Hospital in Montgomery, Alabama. *Feagin Aff.* ¶ 37. Medical staff at Jackson Hospital ordered x-rays and a CT scan, then immediately referred Feagin to an orthopedic specialist, who performed surgery to repair Feagin's leg the next morning, July 30, 2011. *Feagin Aff.* ¶¶ 38-41. Feagin states he was hospitalized for months following his surgery, and he suffered permanent scarring and nerve damage. *Feagin Aff.* ¶ 41; *Amended Compl.* ¶¶ 43, 51 - *Doc. No. 11*.

In several paragraphs of his verified amended complaint, Feagin states he was not given *any* medical care or treatment. *Amended Compl.* ¶¶ 25, 37, 41 - *Doc. No. 11*. In another paragraph he states he received only Tylenol and ice packs. *Id.* ¶ 32. Elsewhere he complains that he did not receive a "hands-on examination" of his leg, which Feagin believes would have confirmed the increased swelling to his leg and that he needed to be referred for an immediate orthopedic evaluation. *Id.* ¶¶ 20, 31, 35, 49. In his response to defendants' report, Feagin swears he received no apparatus to help him use the bathroom in his cell, and he received no crutches, no shower, no change of clothing, and no blankets to elevate his leg and knee. *Feagin Aff.* ¶¶ 22 -23.

### III. DISCUSSION[2]

#### A. Absolute Immunity in Official Capacity

---

[2] Although the defendants present a defense based on Feagin's failure to exhaust the administrative remedy provided at the Covington County Jail, *Doc. No. 29*, at 17, Feagin avers he asked for grievance forms so he could complain about his medical treatment on July 27, July 28, and July 29, 2011, but Cain, Williams, and another officer refused his requests, saying he would be getting surgery soon therefore it would be a waste of time to file a grievance. *Pl.'s Response - Doc. No. 35-1*, at 13-15. Based on the foregoing, and as the plaintiff is entitled to no relief, this court will address the merits of the plaintiff's claims for relief.

9

To the extent Feagin sues the defendants in their official capacities, they are immune from monetary damages.[3] Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). State officials may not be sued in their official capacity unless the state has waived its Eleventh Amendment immunity or unless Congress has abrogated the state's immunity, and neither has occurred in this case. *See Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996) (discussing abrogation by Congress); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984) (discussing Eleventh Amendment immunity); *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir.1990) (Alabama has not waived Eleventh Amendment immunity)). In light of the foregoing, defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.

### B. Deliberate Indifference to Medical Needs[4]

To prevail on a claim concerning an alleged denial of adequate medical treatment, a prisoner must, at a minimum, show that a defendant acted with deliberate indifference to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976);

---

[3] Under all facets of Alabama law, a county sheriff, his jailers, and medical staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1289 (11th Cir.1998); *see* Ala. Const. Art. V, § 112 (designates sheriff and, by extension, his staff as members of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala.1987) (county sheriff is executive officer of the State).

[4] Regardless whether Feagin was a pretrial detainee or convicted inmate, the same standard of review applies to his claim of deliberate indifference to his serious medical needs. *See Lancaster*, 116 F.3d at 1425 n.6 (discussing Eighth Amendment standard that applies to convicted inmates and Fourteenth Amendment standard that applies to pretrial detainees).

*Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). This standard requires a prisoner to "show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). The inquiry includes objective and subjective components, and the prisoner must show "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *see also Farmer*, 511 U.S. at 837 (defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

"A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott*, 182 F.3d at 1257. Not responding to complaints of pain or providing so little pain medication "as to amount to no care at all" constitutes a constitutional violation, and qualified immunity is unavailable to such persons, who are "liable as if they had inflicted the pain themselves." *Id.* The length of delay and the reason for the delay matters, and even short delays are actionable if the medical need is sufficiently serious. *See Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010).

Medical malpractice does not rise to the level of a constitutional violation; instead, the standard is that of subjective, reckless disregard of an objectively substantial risk of serious harm to an inmate. *See Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999) (citations omitted). "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (alterations added) (citations omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."). "[A]s *Estelle* teaches, the question of whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment'

and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995). "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) (where video of high speed chase "utterly discredited" plaintiff's sworn account of the events, court could disregard plaintiff's sworn account because it was "blatantly contradicted by the record, so that no reasonable jury could believe it"); *cf. Joassin v. Lieutenant Murphy, Sergeant Rodgers, Officer Coats, Officer Martin, Officer Woods*, No. 15-13469, 2016 WL 4150899, at *2 (11th Cir. Aug. 5, 2016) (where self-serving declarations from defendants and defendants' colleagues were not "so inherently credible as to 'blatantly contradict[ ]' and 'utterly discredit[ ]' plaintiff's self-serving testimony, summary judgment for defendants was not warranted). Finally, any claim that specific medical procedures have been impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

### 1. Delay in Treatment

The court first addresses Feagin's claim about a delay in his treatment. Here, the undisputed records demonstrates that no verifying evidence has been produced

establishing any detrimental effect because of any defendant's actions or that any defendant disregarded a substantial risk to Feagin's health by delaying medical services or medical care for him. Although Feagin states he went to the emergency room upon his arrival at his next institution and he received surgery the following day, that evidence, alone, is nothing more than Feagin's unsubstantiated suggestion that he received substandard medical care at the jail. Feagin's opinions are insufficient to create a genuine issue, and his failure to support his claims with medical or scientific evidence is fatal to his claim. *See Hill*, 40 F.3d at 1188-89. No evidence exists showing that any defendant demonstrated deliberate indifference towards Feagin's medical needs by delaying or withholding necessary medical treatment, or by interfering with his ability to access any such necessary treatment. Feagin merely disagrees with the course of treatment he received for his broken leg. Such disagreements do not provide the framework for a federal deliberate indifference complaint under 42 U.S.C. § 1983. *Harris*, 941 F.2d at 1505. Summary judgment is, therefore, due to be granted in favor of the defendants on Feagin's claim of delayed treatment.

### 2. Treatment of Pain

Feagin's claim that defendants were deliberately indifferent to his pain is a closer question, but based on this summary judgment record, defendants are entitled to judgment as a matter of law on it, too. Defendants' affidavits contradict Feagin's sworn statements. Normally, such a swearing match would make summary judgment inappropriate. But here, Feagin's version of the events is blatantly contradicted by the

contemporaneous medical records kept at the jail. *See Scott*, 550 U.S. at 380 (disregard party's sworn account of the events if it is "blatantly contradicted by the record, so that no reasonable jury could believe it"); *Whitehead*, 403 F. App'x at 403. In his response to defendants' report, Feagin failed to dispute the medical records or defendants' statement that Feagin received pain medication, and the court considers those facts undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2); *Doc. No. 35-1*. The medical progress notes and medication administration records at the jail indicate that Feagin received his prescription pain medication twice a day from July 25 through July 29, 2011, that his pain was "somewhat relieved" on July 25, that he received and used crutches starting July 25, that he received extra blankets so he could elevate his leg, that he received ice packs for his leg and injured elbow, and that he showered on July 28. *Doc. No. 29-2* at 27-29. In addition, the records indicate that Cain called Dr. Holland's office the morning after Feagin arrived, Cain called Dr. Holland's office again the following day, and on the third day she set up an appointment with Dr. Holland for August 1. *Doc. No. 29-2* at 27. McWhorter approved the hospital's recommended prescription pain medication on July 25, and he reviewed Feagin's chart and x-rays on July 27. *Doc. No. 29-2* at 27-28. Medical records indicate that Feagin is a diabetic with high blood pressure; staff checked Feagin's blood pressure every day and regulated his blood sugar twice a day. *Doc. No. 29-2* at 17-18. Based on the statements received from the medical defendants, in accordance with their medical experience and professional judgment, they did not deem it necessary to order immediate referral or emergency

treatment, and it was McWhorter's professional medical judgment that it was not necessary for him to conduct a physical medical evaluation of Feagin. *Williams Aff.* ¶ 14; *Cain Aff.* ¶ 29; *McWhorter Aff.* ¶¶ 22, 30. Feagin's various statements that he received no blankets, no treatment, no medications, or only Tylenol and ice packs, are blatantly contradicted by the medical records such that no reasonable juror could believe Feagin's statements. *See Scott*, 550 U.S. at 380; *Whitehead*, 403 F. App'x at 403.

Feagin may have preferred a "hands-on" examination of his leg and quicker referral to an orthopedic specialist, but the undisputed medical records demonstrate that defendants provided him continuous medical review and treatment. The medical care Feagin received was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505 (quotation marks and citation omitted). That Feagin desired different treatment does not amount to deliberate indifference. *Hamm*, 774 F.2d 1567, 1575 (11th Cir. 1985) (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution). Whether medical personnel "should have employed additional . . . forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545-46 (quoting *Estelle*, 429 U.S. at 107); *see also Adams*, 61 F.3d at 1546 (inmate's allegation that his prison physician did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence'. . . to the level of deliberate indifference") (citations omitted). The mere fact that medical

personnel who treated Feagin elsewhere differed in their opinions as to the appropriate course of treatment for Feagin does not, without more, constitute deliberate indifference. *See Garvin*, 236 F.3d at 898. Here, Feagin has not provided sufficient evidence to create a genuine dispute of material fact so that a juror could find in his favor on his claim that defendants were deliberately indifferent to his pain. *See Matsushita*, 475 U.S. at 587.

It is evident that defendants Cain, Williams, and McWhorter rendered treatment to Feagin in accordance with their professional judgment. In addition, Feagin has failed to present any evidence which indicates that these medical defendants knew that the manner in which they provided treatment created a substantial risk to Feagin's health and that with this knowledge consciously disregarded such risk. The record is therefore devoid of evidence, significantly probative or otherwise, showing that defendants Cain, Williams, or McWhorter acted with deliberate indifference to Feagin's serious medical needs.[5] In addition, Feagin fails to show defendant Southern Health Partners, Inc., is responsible for any alleged injury to plaintiff based on respondeat superior. *See Marsh v. Butler*, 268 F.3d 1014, 1035 (11th Cir. 2001). Consequently, summary judgment is due to be granted in favor of defendants. *See Matsushita*, 475 U.S. at 587.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

---

[5] Because Feagin fails to show a constitutional violation, defendants are also entitled to qualified immunity. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

3. This case be dismissed with prejudice.

4. Costs be taxed against the plaintiff.

It is further

ORDERED that on or before **September 14, 2016** the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 31st day of August, 2016

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE